Randal Whitecotton, Esq., (SBN#:152950)
COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor
Santa Ana, CA 92701
Telephone:  (714) 426-2800
Facsimile:   (714) 252-6302
Randy@clawcenter.com

Attorneys for Plaintiffs:
LIDIA ALDANA and
LILIAN DOMINGUEZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIDIA ALDANA and LILIAN DOMINGUEZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A. formerly known as BAC HOME LOANS SERVICING LP; EVERHOME MORTGAGE, a division of EVERBANK SAVINGS ASSOCIATION; and DOES 1 to 50, inclusive,<br><br>                              Defendants. | Case No. <u>CV 14-07489-MMM-PJW</u><br><br>Honorable George H. King<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>[To Be "Taken Under Submission Without Oral Argument" Per Minute Order Dated October 8, 2014.] |

//
//
//
//
//

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

# TABLE OF CONTENTS

Page

I.   INTRODUCTION.................................................................3

II.   FACTUAL BACKGROUND..……...........................................4

III.   PROCEDURAL POSTURE

IV.   LEGAL STANDARD ……….…....................................... 10

V.   LEGAL ARGUMENT ………………………………… 11

    A.   Dominguez States a Valid Claim Against BANA for
    Violation of the Real Estate Settlement Procedures
    Act 12 U.S.C. Section 2605(b)  ……………………………… 11

        1. Dominguez Has Standing To Assert
        Her RESPA Claim …………………………………… 11

        2. BANA Violated Section 2605…………………………… 12

        3. Aldana Should Be Deemed to Have
        Standing…………………………………………… 12

    B.   Plaintiffs State a Valid Claim for Violation of Civil
    Code Section 2937……………………………………......... 15

    C.   Plaintiffs State a Valid UCL Claim……………………….......... 16

VI.   CONCLUSION………………………………………........ 19

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

### MEMORANDUM OF POINT AND AUTHORITIES

## I.     INTRODUCTION

This lawsuit arises from defendants' statutory violations and wrongful acts engaged in the for the purpose of wrongfully foreclosing upon a residential property owned by plaintiffs LIDIA ALDANA ("Aldana") and LILIAN DOMINGUEZ ("Dominguez") (collectively, "Plaintiffs").    Plaintiffs are simple, hardworking individuals who did everything expected of them to retain their home: they paid their mortgage payments in full, on time, and to the entities they were advised were responsible for servicing their loan — first to defendant Bank of America, N.A. ("BANA"), then to defendant EVERBANK.  For its part, BANA accepted the loan payments and treated Plaintiffs as co-borrowers, each with authority to make payments on the loan and discuss with BANA the confidential information pertinent to the loan.    Although Plaintiffs made all loan payments required of them in accordance with BANA's requests and instructions, BANA inexplicably failed to apply those payments to Plaintiffs' account.    What is worse, BANA allowed Plaintiffs erroneously to be declared in "default" when it knew that designation to be false: Plaintiffs had made all required loan payments to BANA as promised and were **not** in default.

Compounding the fiasco it had caused, BANA transferred the loan to EVERBANK without providing notice to Plaintiffs as statutorily required.  BANA's transfer of Plaintiffs' loan to EVERBANK without notice further disadvantaged Plaintiffs, effectively denying them the information they would need to ensure that their loan payments were properly received, processed, and credited.

As a result of BANA's egregious errors and missteps, and its inexplicable failure to cure them, Plaintiffs lost their home and its value in a foreclosure and trustee's sale that should never have occurred.

"It is an elementary maxim of equity jurisprudence that there is no wrong

without a remedy."[1]  Yet, in its motion to dismiss ("Motion") that is essentially what BANA argues.   Ignoring the obvious — *i.e.,* its acceptance of Plaintiffs' loan payments without crediting them to Plaintiffs' loan balance, or at the very least having the payments returned to Plaintiffs or timely redirected to a new loan servicer — BANA asserts: (1) that Plaintiffs lack standing as to their statutory claims; (2) that Plaintiffs have not pled their claims with sufficient specificity; and (3) that, even assuming Plaintiffs have sufficiently pled standing and BANA's violations of law, they have not pled injury or damages resulting from those violations.

As discussed more fully below, BANA's Motion should be denied for at least the following compelling reasons:

(1) Dominguez has standing because she is a "borrower" and suffered injury as a result of BANA's wrongful acts;

(2) Aldana, though admittedly not a signatory to the original loan documents, should be deemed to have standing because (a) she held title to the property, (b) she lived on the property as her principal residence, and (c) she acted as a co-borrower and/or subsequent obligor by accepting "borrower" obligations — thereby falling within the category of mortgage-loan-paying homeowners sought to be protected from improper dispossession of their home without proper notice;

(3) Plaintiffs have pled their causes of action with specificity sufficient to put BANA on notice of the claims asserted and remedies sought; and

(4) Plaintiffs have adequately alleged actual damages and loss of money and property as demonstrated by, among other things, their loss of the payments they made to BANA, their loss of their home in a foreclosure sale, their loss of the equity in their home as a result of the foreclosure sale, and their loss of money in connection with their efforts to detect, understand, prevent, and remedy BANA's

---

[1]  *Leo Feist v. Young* (1943) 138 F.2d 97.

OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

1  wrongful actions.

2  **II.    FACTUAL BACKGROUND**

3      **A.    The 2009 Loan Transaction**

4      On or about October 16, 2009, Dominguez obtained a $225,091 loan secured

5  by a Deed of Trust ("DOT") on real property located at 15515 Hornell Street,

6  Whittier, California 90604 (the "Subject Property.")  (Complaint ¶ 14.)  The DOT

7  named Dominguez as the borrower, Home Savings America as the lender ("Home

8  Savings"), Western Resources Title as the trustee, and Mortgage Electronic

9  Registration Systems, Inc. ("MERS") as the beneficiary.[2] (*Id.*, Exh. "B.")

10     **B.    The "Cease and Desist" Consent Orders Resulting From BANA's**

11         **"Unsafe and Unsound" Foreclosure Practices**

12     Effective April 13, 2011, BANA and EVERBANK entered into Consent

13 Orders with the United States government arising from governmental findings

14 following a comprehensive, inter-agency review in which BANA and EVERBANK

15 were identified as having engaged in certain foreclosure abuse practices and other

16 "unsafe or unsound banking practices" related to foreclosures.  With respect to the

17 2011 Consent Order agreed to by BANA (the "BANA Consent Order"),[3] BANA

18 reached a stipulated agreement with the U.S. Comptroller of the Currency in which

19 ─────────────────────

20 [2]   On March 20, 2012, i.e., approximately six years after the loan's issuance, an Assignment of
   Deed of Trust purporting to transfer all beneficial interest under the DOT to BANA was executed

21 bearing the signature of a purported MERS authorized representative. (Complaint ¶ 30, Exh. "F.")
   Plaintiffs allege that MERS had no authority to assign the DOT because the DOT had never been

22 timely transferred into the securitized pool of loans over which MERS had authority.  (*Id.*)  The
   March 20 Assignment of Deed of Trust was recorded on April 5, 2012.  Plaintiffs allege that the

23 MERS Servicer ID Look Up System identifies BANA only as a mere servicer of the loan and
   confirms BANA never was the owner, investor, or Holder of the Note.  (Complaint ¶ 32, Exh.

24 "G.")  In fact, the investor is Ginnie Mae.  (*Id.*)  Plaintiffs allege that BANA intentionally and

25 willfully misrepresented itself to Plaintiffs on the Assignment of Deed of Trust, falsely identifying
   itself as the owner of the loan.  (*Id.*)

26

27 [3]   *See* BANA Consent Order at:  http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-
   2011-47b.pdf  ("The OCC has identified certain deficiencies and unsound practices in residential

28 mortgage servicing and in [BANA's] initiation and handling of foreclosure proceedings."

─────────────────────
4

BANA consented to a Cease and Desist Order ("Order.")  BANA's consent to the Order followed detailed **findings**[4] by the Office of the Comptroller ("OCC") that BANA's "unsafe or unsound" banking and foreclosure practices included, without limitation:

- Filing or causing to be filed in state and federal proceedings **false affidavits**, including, without limitation, under-oath statements executed by BANA employees filed in federal court asserting falsely that the financial information contained in the statement is true and correct based on personal knowledge or review of the relevant books and records when, in fact, the affiant had no personal knowledge and never conducted any review of the relevant books and records;

- **Misrepresenting** and inflating the sums owed by borrowers, such as "the amount of principal and interest due"[5];

- Failing to ensure proper administration of its foreclosure processes; and

- Pursuing foreclosure processes without first ensuring a legal and proper basis to do so — *i.e.,* without verifying accuracy of the documents and records upon which the foreclosure is based.

### C.  Aldana Makes Timely Loan Payments In Exchange for Title

On or about March 15, 2012, Aldana entered into an agreement with Dominguez in which she became obligated to make the loan payments applicable to the Subject Property.  In exchange, Dominguez transferred title to the Subject Property to Aldana through a grant deed.  (Complaint ¶ 13.)

---

[4]   *See id* at p.2, Article I.

[5]   *See* Bana Consent Order, p.2 Article I, § 2(a) at:  http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47b.pdf.

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

Throughout the March 15, 2012 to February 2013 time period, Aldana and Dominguez complied with their respective obligations to make the loan payments. (Complaint ¶¶ 15, 17.)   Aldana submitted the payments directly at a BANA branch so that she would receive confirmation of her timely payments.  (Complaint ¶ 16.) Throughout the time Aldana made the loan payments to BANA, BANA consistently treated Aldana as a co-borrower and/or a subsequent obligor by communicating with her about the loan, accepting her loan payments, and representing to her that it was applying the received payments toward the outstanding loan balance.  (Complaint ¶¶ 16-19.)   To this day, BANA recognizes Plaintiffs as co-borrowers, as evidenced by their claim that *both* Aldana and Dominguez were allegedly in "default" on the mortgage loan.  (Motion 3:24-25 ["[T]he NOT indicates that ***Plaintiffs defaulted*** on the Loan in January 2013."]); Motion 3:25-4:1 ["Plaintiffs do not allege they cured ***their default***."].) (Emphasis added.)

**D.** **BANA Pays Over $1.1 Billion Toward Compensating Borrowers Who, Like Plaintiffs, Were Wrongfully Foreclosed Upon When Not In Default, or Subject to Other Foreclosure Abuse Practices by BANA**

In February 2013, the BANA Consent Order was amended to, among other things, reflect the fact that BANA agreed it "will make a cash payment of $1,127,453,261.00 into a Qualified Settlement Fund" (the "Fund").  The Fund was created to provide payments pursuant to a distribution plan developed by the OCC and the Board of Governors[6] to "borrowers who had a pending or completed foreclosure on their primary residence" any time from January 1, 2009 to December 31, 2010.  Notably, the OCC developed a Financial Remediation Framework ("OCC Remediation Framework") which identifies 14 categories of foreclosure abuse

---

[6]   *See* February 2013 Amendment to BANA Consent Order at: http://www.occ.gov/static/enforcement-actions/ea2013-127.pdf

OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

1  practices and establishes a remedy and dollar payment from the Fund.[7] Prominently

2  set forth as Category No. 2 in the OCC Remediation Framework is a remedy and

3  payment structure devoted entirely to borrowers who were harmed in precisely the

4  same manner that BANA harmed Plaintiffs:   **"Borrower not in default when**

5  **foreclosure occurred or in default as direct result of servicer error."**[8]   The

6  remedy set forth in the OCC Remediation Framework for a Category 2 violation is

7  payment to the borrower from the Fund the sum of "$125,000, plus equity, remedy

8  deficiency, and correct credit reports."  (*Id.*)

9      E.  **Plaintiffs Made All Required Loan Payments; BANA Accepted the**

10          **Payments, Failed to Credit the Account, Erroneously Declared the**

11          **Loan in "Default," and Transferred the Loan without Notice**

12      In February 2013, Aldana attempted to make her usual mortgage payment to

13  BANA and a BANA teller verbally informed her, presumably in Aldana's role as

14  co-borrower and/or subsequent obligor,[9] that the loan was transferred to

15  EVERBANK. BANA **never provided written notice** of a change in loan servicers,

16  either to Aldana or Dominguez.  (Complaint ¶ 3.)  Aldana and Dominguez were

17  confused about the verbal reference to a purported transfer but nonetheless relied on

18

19  [7]   The 14 categories are: (1) Servicemembers Civil Relief Act violations; (2) **Borrower not in default when foreclosure occurred or in default as direct result of servicer error**; (3a) Failure

20  to convert written trial-period plan to permanent modification; (3b) Foreclosure completed during written trial-period plan for a permanent modification; (4) Foreclosure completed when borrower

21  performing under documented forbearance plan; (5) Loan modification application denied in error, or **complete loan modification application where borrower would have qualified was never**

22  **decisioned**; (6) **No follow up on loan modification application**; (7) Never solicited loan modification; (8) Failed to approve modification in proscribed timeframe; (9) Used wrong interest

23  rate in an approved modification; (10) Servicer initiated foreclosure or foreclosed on borrower who was protected by federal bankruptcy law; (11) Servicer did not have standing to foreclose;

24  (12) **Servicer failed to provide legally sufficient notice**; and (13) Servicer error occurred that did not directly cause foreclosure, but did directly result in financial injury to borrower. (*See*

25  http://www.occ.gov/topics/consumer-protection/foreclosure-prevention/financial-remediation-framework.pdf.)

26  [8]   *See* OCC Remediation Framework at: http://www.occ.gov/topics/consumer-

27  protection/foreclosure-prevention/financial-remediation-framework.pdf.

28  [9]   Unless BANA recognized Aldana as a co-borrower and/or subsequent obligor it had no authority to discuss Dominguez's loan with Aldana.

BANA's representation by doing what BANA instructed: making future payments to EVERBANK instead of BANA. (Complaint ¶ 18.) Two months later, EVERBANK returned the first payment Plaintiffs had made to EVERBANK, stating the loan was purportedly in "default" and that EVERBANK will not accept any payments unless the Note is paid in full. (*Id*.)

Aldana and Dominguez were confused as to how the loan could be in default when all of the required payments had been made in accordance with the Note's terms. They contacted BANA to ask for clarification. (Complaint ¶ 19.) A BANA representative told them Plaintiffs' payments had not been applied toward the outstanding loan balance and that, for reasons never explained by BANA, EVERBANK was of the understanding Plaintiffs were in default. (*Id*.)

As a result of BANA's failure to apply the timely and properly-made loan payments toward Plaintiffs' outstanding loan balance, as promised, and/or its misrepresentations regarding its authority to service the loan or transfer the loan-servicing responsibilities to another servicer, Plaintiffs were wrongfully foreclosed upon notwithstanding their compliance with the loan's terms and BANA's instructions.  BANA represented falsely to Plaintiffs and potentially others that Plaintiffs were in "default" despite BANA's having actual and constructive notice: (1) that Plaintiffs were not in default on the loan; (2) that Plaintiffs had submitted to BANA all required loan payments; and (3) that, therefore, Plaintiffs should not be foreclosed upon. The effect of BANA's false representations, broken promises, and other "unsafe or unsound" banking practices, was to cause the wrongful foreclosure and sale of Plaintiff's property.

BANA's acceptance of Plaintiffs' payments without applying them to reduce Plaintiffs' outstanding loan balance was a wrongful act effectively hidden by BANA when it purportedly "transferred" Plaintiffs' loan to EVERBANK without correcting its known errors or providing notice; as a result, BANA set the stage for its hand-

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

picked servicer, EVERBANK, to foreclose upon **non-defaulting** Plaintiffs. To this day, BANA refuses to disclose precisely when it contends EVERBANK became responsible for servicing Plaintiffs' loan — and in so refusing allows itself to have retained Plaintiffs' loan payments without affording Plaintiffs the ability to know whether BANA continued to accept Plaintiffs' loan payments when it was no longer the loan servicer.

Despite Plaintiffs' best efforts to persuade BANA and EVERBANK to correct their records and cease and desist their improper foreclosure efforts, Defendants persisted in pursuing foreclosure. The Subject Property was sold on or about January 23, 2104 in a public auction to a third party.

## III.   PROCEDURAL POSTURE

On February 4, 2014, Aldana filed a complaint in Superior Court for the County of Los Angeles.  The case was removed to the United States District Court, Central District of California.  On March 13, 2014, BANA and EVERBANK filed motions to dismiss Aldana's complaint.  On May 2, 2014, the District Court ruled on BANA's and EVERBANK's motions.  The Court dismissed Aldana's complaint in its entirety but allowed leave to amend substantive allegations for certain claims and/or to have Dominguez substitute in the action as a real party in interest.

Aldana and Dominguez filed a First Amended Complaint on or about May 24, 2014.  On June 30, 2014, Aldana and Dominguez voluntarily dismissed the First Amended Complaint without prejudice.[10]

---

[10]   A voluntary dismissal is a 'unique circumstance,' *In Re Piper Aircraft Distribution Sys. Antitrust Litig* (8th Cir. 1977) 551 F.2d 213, 219, that moots the case and strips the court of jurisdiction, *A.B. Dick Co. Marr* (2nd Cir. 1952) 198 F.2d 498, 502, and does not result in a final, appealable order, 9 Wright & Miller, *Federal Practice & Procedure* § 2367 (3d ed. 2008).  *See also Nelson v. Napolitano* (7th Cir. 2011) 657 F.3d 586, 587 ("A suit that is voluntarily dismissed under Rule 41(a) generally is treated as if it had never been filed.")

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

The instant action was filed in Superior Court on or about August 29, 2014, and removed to District Court on or about September 25, 2014.

## IV.   LEGAL STANDARD

A complaint filed in Federal court need only comply with liberal "notice pleading" standards, *i.e.,* "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2). "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkewicz v. Sorema, N.A.* (2002) 534 U.S. 506, 514-15 (*"Swierkewicz"*); *Erickson v. Pardus* (2007) 551 U.S. 89 (per curiam). As the Ninth Circuit Court of Appeals has observed, even "a relatively sparse complaint satisfies Rule 8(a)'s pleading standards." *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1215 (*"Starr"*) (citing *Erickson, supra,* 534 U.S. at 89.)   On the other hand, pure "what-if" allegations consisting of nothing more than conjecture and speculation about what may be "possible," are, in the face of a plausibly-asserted defense, insufficient to withstand a motion to dismiss. *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 (*"Twombly."*)

In ruling on a motion to dismiss, the court must accept as true all factual allegations contained in the complaint and draw all inferences in favor of the non-moving party. *Usher v. City of Los Angeles* (9th Cir. 1987) 828 F.2d 556, 561.  A motion to dismiss must be denied when the plaintiff's complaint contains factual allegations sufficient to demonstrate *any plausible theory* of recovery—even if the asserted theory is unlikely or deemed less plausible than a contrary theory offered by defendant. *Starr, supra,* at 1216.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Alimena v. Vericrest Fin., Inc.* (E.D. Cal. 2013) 964 F. Supp. 2d 1200 (quoting *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678).  "If

there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." (*Id.*)

## V.   LEGAL ARGUMENT

### A.   Dominguez States a Valid Claim Against BANA for Violation of the Real Estate Settlement Procedures Act 12 U.S.C. Section 2605(b)

Dominguez has pled a valid cause of action for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 ("Section 2605").  Section 2605 provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the loan to any other person." 12 U.S.C. § 2605(b)(1).  As shown below, Dominguez has standing to bring a claim under Section 2605 and has adequately pled the necessary elements to state a claim.

#### 1.   Dominguez Has Standing To Assert Her RESPA Claim

Dominguez is a named plaintiff in this action and the original obligor on the Note pertinent to the Subject Property. (Complaint ¶ 14.) Thus, Dominguez is undoubtedly a "borrower" within the meaning of Section 2605 and has standing to assert a claim under that section of RESPA.  12 U.S.C. § 2605(b).  BANA admits as much in its Motion; nowhere in the four pages that it devotes to its RESPA discussion does BANA contend or even suggest that Dominguez lacks standing. (*See generally* Motion.)   To the contrary, by expressly directing its standing argument solely to Aldana, BANA impliedly admits that Dominguez, as the original borrower, has standing.  (*See* Motion 7:24-25) ("As an initial matter, Plaintiffs' claim for violation of Section 2605 fails *as to Aldana* for the simple reason that she is not a borrower under the DOT.") (Emphasis added.)

///

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

### 2. BANA Violated Section 2605

BANA concedes through its silence that it violated Section 2605 by failing to provide Dominguez written notice that her loan was being transferred to EVERBANK for loan servicing. (*See generally* Motion.)   Nevertheless, BANA relies upon the uncertainty it created (due to its *failure* to provide notice) as a basis to argue against liability for that failure.  Specifically, BANA argues Plaintiffs have not explicitly alleged servicing of the loan was "affirmatively" transferred to or by BANA (Motion 9:5-6.)  BANA's argument is without merit.

Dominguez alleges Defendants, including BANA, "failed to notify Plaintiff in writing of the transfer of the servicing of her loan."  (Complaint ¶ 3.)  She also alleges the servicing of her loan was affirmatively transferred to EVERBANK. (Complaint ¶ 3.)  Moreover, she alleges BANA and EVERBANK deemed her to be in "default" even though she made all required loan payments consistent with the instructions and notices she had been provided.  (Complaint ¶ 15.)  While discovery ultimately will shed light on precisely *why* Dominguez was wrongfully declared to be in default when she had made all required loan payments as instructed, BANA's failure to provide written notice is alleged in the complaint to be a cause of that event.   That improper "default" designation, in turn, is causally connected to Plaintiffs' loss of their home and its value in foreclosure.  This loss of money and property is sufficient for standing and need not be precisely quantified in a *pre-discovery* complaint.  (Complaint ¶ 5.)

These allegations state a viable claim. For purposes of Section 2605, it is sufficient that Plaintiffs allege transfer of the loan to EVERBANK without BANA having provided written notice of the transfer (Complaint p. 13, ¶3), delivery of all required loan payments in accordance with the notices and instructions actually provided to them (Complaint ¶ 15), and, notwithstanding their timely delivery of all required loan payments, the filing and recording of an erroneous notice of default,

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

1   which resulted in Plaintiffs' loss of their property and its value in a trustee's sale.

2   (Complaint ¶ 28.)

### 3.   Aldana Should Be Deemed To Have Standing

4   Aldana concedes she is neither a signatory to the original mortgage loan

5   documents executed by Dominguez in 2009, nor identified as "borrower" in the

6   DOT.  If Section 2605 were necessarily limited to such a narrow definition of the

7   term "borrower," then BANA would be correct in conclusively asserting that Aldana

8   lacks standing to bring a Section 2605 claim.  But Section 2605 does not explicitly

9   define the term "borrower," nor does it contain any language limiting the term

10  "borrower" only to those individuals who are identified as "borrower" in the original

11  mortgage-loan documents.

12  Moreover, a central purpose of Section 2605 is to protect mortgage-loan-

13  paying homeowners from dispossession of their homes due to their not having

14  received sufficient notice of a change in loan servicers and any related changes to

15  instructions for timely and proper submission of loan payments. Section 2605's

16  notice requirement is a procedural safeguard aimed at ensuring that a homeowner's

17  failure to make required mortgage loan payments, and any resulting notice of

18  default, is not due solely to the homeowner not having been notified about a change

19  in loan servicers.  While in many, and perhaps even most, cases the mortgage-loan-

20  paying homeowner is a signatory to the loan documents, and therefore a "borrower"

21  in the strictest sense, in many instances the mortgage-loan-paying homeowner is not

22  a signatory to the original loan documents but nevertheless occupies a position in

23  which he or she has undertaken similar payment obligations and stands to suffer an

24  injury virtually identical to that of the original borrower should a change in loan

25  servicers occur without their having received notice.  *See McGarvey v. JP Morgan*

26  *Chase Bank, N.A.* (E.D. Cal. Oct. 10, 2013) 2013 WL 5597148 (order granting in

27  part and denying in part Chase's motion to dismiss) (complaint alleged that

28

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax (714) 252-6302

OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

daughter, who was not a borrower on the note, paid thousands of dollars in an attempt to keep the home, while waiting for Chase to provide her with information about the mortgage and available loss mitigation options; noting that the home was lost at a foreclosure sale); *Bennett v. Donovan* (D.D.C. Sept. 30, 2013) __ F. Supp. 2d __, 2013 WL 5424708 (holding a homeowner's spouse need not be a "borrower" or "mortgagor" to be protected from displacement in foreclosure); *cf. Stolz v. OneWest Bank,* 2012 WL 135424, at *5 (D. Or. Jan. 13, 2012) (holding that non-borrower plaintiff who neither signed the note nor the mortgage lacked standing to bring a RESPA claim).

Here, the complaint alleges Aldana and Dominguez are co-owners of the Subject Property.   (Complaint ¶¶ 2-13.) It also alleges that each of them were residents of the Subject Property at all relevant times. (Complaint ¶ 1.)  It further alleges Aldana held title to the Subject Property and made Dominguez's loan payments. In addition to these arrangements between Aldana and Dominguez, BANA itself recognized Aldana as a borrower, subsequent obligor, and/or co-obligor. (*See* Motion 3:24-25 ["[T]he NOT indicates that ***Plaintiffs defaulted*** on the Loan in January 2013."]); Motion 3:25-4:1 ["Plaintiffs do not allege they cured ***their default***."].) (Emphasis added.) BANA's recognition of Aldana in this capacity is also evidenced by its disclosures to Aldana of confidential financial information pertinent to the loan, its acceptance of Aldana's payments on the loan, its verbal representations to Aldana regarding the necessary manner and means of making payments on the loan, and its verbal representations to her regarding the processing and application of loan payments made by Aldana.   (Complaint ¶¶ 13-28.)

Given that Aldana held title to the property, occupied the property as her principle residence, agreed to make (and did make) borrower loan payments, and was treated as borrower by BANA, she behaved as borrower and faced the same risk of loss as borrower, *i.e.,* dispossession of her home and loss of  its value, should the

COMMUNITY LAW CENTER
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

loan on her property be transferred to a new servicer without advance written notice resulting in default. Accordingly, Aldana should be deemed "borrower" with standing under Section 2605.[11]

**B.  Plaintiffs State a Valid Claim for Violation of Civil Code Section 2937**

California Civil Code section 2937 provides, "The legislature hereby finds and declares that ***borrowers or subsequent obligors*** have the right to know when a person holding a promissory note, bond, or other instrument transfers servicing of the indebtedness secured by a mortgage or deed of trust on real property containing one to four residential units located in this state." Cal. Civ. Code § 2937(a) (emphasis added.) Section 2937 also provides that a ***borrower or subsequent obligor*** shall not be liable for payments made to the previous servicing agent "if these payments were made prior to the borrower or subsequent obligor receiving written notice of the transfer as provided by subdivision (e) and the payments were otherwise on time." Cal. Civ. Code § 2937(g) (emphasis added.)

Here, Defendants do not dispute that Dominguez is a borrower and therefore has standing. With respect to Aldana, for the same reasons she should be deemed a

---

[11]    If Aldana is deemed *not* a "borrower" within the meaning of Section 2605, and therefore determined to lack standing under Section, then it is that very fact which arguably gives rise to the existence of a legal duty owed by BANA to Aldana. This is so because while banks generally owe no legal duty to a borrower based on acts occurring in the normal course of a lender/borrower relationship, when a lender engages with an individual in a manner that is outside that traditional lender/borrower relationship, a legal duty may arise requiring the lender to act reasonably. *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.4th 872. Here, if Aldana is deemed not to be a "borrower," then by definition *any* conduct engaged in by BANA in the course of its communications and dealings with Aldana necessarily occurred *outside* the lender/borrower relationship. As such, such communications and dealings may give rise to a negligence claim and potentially other theories of liability arising from BANA's alleged breach of that legal duty. *See, e.g., Reiydelle v. J.P. Morgan Chase Bank, N.A.,* Case No. 12-cv-6543 JCS, 2014 WL 312348, at *18 (N.D. Cal. Jan. 28, 2014) (explaining the test for determining whether a financial institution assumed a legal duty by acting outside its role as a money lender). Thus, if Aldana is determined not to be a "borrower," then she should be afforded an opportunity to file a First Amended Complaint asserting legal theories arising from that determination.

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

"borrower" within the meaning of Section 2605, discussed *supra*, she also should be deemed a "subsequent obligor" under Section 2937.

Plaintiffs allege they made all required loan payments. Yet, Plaintiffs were deemed in "default." (Complaint ¶¶ 13-19.) The default necessarily depended on Defendants holding Plaintiffs *liable for payments they had already made* prior to receiving written notice of the loan's transfer. Stated another way, had Defendants credited **every payment** made by Plaintiffs, Plaintiffs would not have been declared in default and would not have lost their home in foreclosure.

These allegations are sufficient to plead Defendants' violation of Section 2937. Defendants' failure to provide notice was followed by their sale of Plaintiffs' home in foreclosure despite Plaintiffs' having made all required loan payments. (Complaint ¶ 15.) Plaintiffs are entitled to recover their resulting actual damages, including, but not limited to, the value of the their home.

## C.   Plaintiffs State a Valid UCL Claim

California courts have repeatedly held all that is necessary to establish a violation of Cal. Bus. & Prof. Code § 17200 *et seq*. ("Section 17200"), is to show that the defendant is a business, engaged in acts or practices that are unlawful, fraudulent or unfair. Thus, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal. App. 4th 824, 837.

The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made. *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832, 838-39. It is not necessary that the predicate law provide for private civil enforcement. "Unfair," as used in the statute, simply means any practice whose harm to the victim outweighs its benefits. "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

are likely to be deceived. *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267.

The "unfair" prong of Section 17200 intentionally provides courts with broad discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times-Mirror Co.* (1980) 102 Cal. App. 3d 735, 740. An unlawful business practice or act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal. App. 3d 509, 530. "[T]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal. App. 4th 1093, 1104.

Here, Plaintiffs have adequately pled their claims under Section 17200. Firstly, with respect to standing, Plaintiffs have adequately alleged "injury in fact" because the complaint alleges Plaintiffs lost money and property as a result of a foreclosure which should never have occurred had Defendants properly credited Plaintiffs' loan payments and/or provided statutorily-compliant written notice of any loan transfer. These allegations of Plaintiffs' economic loss are sufficient for standing under the UCL. As the California Supreme Court has noted:

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. (citation omitted).

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323. The foregoing list is not exhaustive and the notion of "lost money" under the UCL is not limited. (*Ibid.*) Moreover, "the quantum of lost money or property necessary to show standing is

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

COMMUNITY LAW CENTER

900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

1   only so much as would suffice to establish injury in fact" and "it suffices . . . to

2   allege some specific, identifiable trifle of injury. [Citations.]"  (*Id.* at pp. 324-325,

3   fn. omitted.)  "The basic idea . . . is that an identifiable trifle is enough for standing

4   to fight out a question of principle; the trifle is the basis for standing and the

5   principle supplies the motivation." (*Id.* at 325, fn. 7.)

6       Moreover, Aldana's standing under Section 17200 does not depend on

7   whether she is deemed "borrower" in the original loan documents.  Indeed, there is

8   no requirement within the UCL that, in order to have standing, the plaintiff must

9   have had "business dealings" of any kind with the defendant.  *Law Offices of*

10   *Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4[th] 544.

11       With respect to BANA's unlawful, unfair and fraudulent business acts and

12   practices, those include, *inter alia*:  (a) executing and recording false and misleading

13   documents; (b) executing and recording documents without the legal authority to do

14   so; (c) failing to disclose the principal for which documents were being executed

15   and recorded in violation of CA Civil Code Section 1095; (d) failing to credit loan

16   payments received from borrowers; and (e) allowing foreclosure to proceed based

17   on an erroneous claim of "default" arising solely from Defendants' faulty

18   recordkeeping and/or violations of state and Federal notice requirements.

19   (Complaint pp. 17-20, ¶¶ 17-29.)  Notably, the complaint's allegations of such

20   "unsafe or unsound" foreclosure and banking practices are entirely consistent with

21   the OCC's investigatory **findings** regarding BANA, which led to the 2011 Consent

22   Order agreed to by BANA, as well as the over $1 billion Fund agreed to by BANA

23   just over one year ago in February 2013.

24       In summary, the complaint sufficiently alleges practices engaged in by

25   Defendants that are likely to deceive the public, in violation of existing law, and in

26   contravention of California's strong public policy favoring accuracy, accountability,

27   and due process protections for homeowners prior to a lender's or servicer's

28

initiation of foreclosure proceedings.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny BANA's Motion in its entirety.  Alternatively, should the Court grant BANA's Motion in whole or in part, Plaintiffs respectfully request leave of Court to File a First Amended Complaint.

Dated:  October 27, 2014                    Randal Whitecotton, Esq.
                                            **COMMUNITY LAW CENTER**



                                    By:  /s/ Randal Whitecotton
                                         Randal Whitecotton
                                         Attorney for Plaintiffs
                                         LIDIA ALDANA and
                                         LILIA DOMINGUEZ

**COMMUNITY LAW CENTER**
900 N. Broadway, 8th Floor, Santa Ana, California 92701 Tel. (714) 428-2800 Fax. (714) 252-6302

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

  I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 900 N. Broadway. 8th Floor. Santa Ana, CA 92701.

On October 27, 2014, I served the foregoing document described as **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached service list:

[ X ] **BY MAIL** – I deposited such envelope in the mail at <u>Santa Ana</u>, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at <u>Santa Ana</u>, California I the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ] **BY PERSONAL SERVICE** – I caused such envelope to be delivered by a process server employed by _____.

[ ] **VIA FACSIMILE** – I faxed said document, to the office(s) of the address(s) shown above, and the transmission was reported as complete  and without error.

[ X ] **BY ELECTRONIC TRANSMISSION** – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(s) indicated.

[ ] **BY OVERNIGHT DELIVERY** – I deposited such envelope for collection and delivery by _____ with delivery fees paid or provided for in accordance with ordinary business practices.  I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by _____. They are deposited with a facility regularly maintained by _____ for receipt on the same day in the ordinary course of business.

[ ] (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ] (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on <u>March 25, 2014</u> at <u>Santa Ana</u>, California.

    <u>/s/ David Morales</u>
    David Morales

Proof of Service

## <u>CERTIFICATE OF SERVICE</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Christian C Chapman**
AMSL Legal Group LLP
400 Exchange Suite 100
Irvine, CA 92602                     representing          **EVERBANK**
949-265-9940 ext. 181                                     *(Defendant)*
949-236-5567 (fax)
cchapman@amslca.com


**Sara Janett Quinto**
Reed Smith LLP
101 Second Street Suite 1800
San Francisco, CA 94105              representing          **Bank of America NA**
415-659-4912                                              *(Defendant)*
415-391-8269 (fax)
squinto-seibert@reedsmith.com